IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

AGSTAR FINANCIAL SERVICES, FLCA,
et al.,
                      Plaintiff,                      Case No. 3:09 CV 2445
   -vs-
                                              MEMORANDUM OPINION
                                                AND JUDGMENT
OOLMAN DIARY LEASING, LLC, et a.,

                    Defendant.
KATZ, J.

### BACKGROUND

This matter is before the Court on Plaintiffs' AgStar Financial Services, FLCA ("FLCA") and AgStar Financial Services, PCA ("PCA," and together with FLCA, the "AgStar Entities") *Complaint for Breach of Contract, Foreclosure, Replevin and Other Relief* (the "Complaint"), the AgStar Entities' unopposed *Motion for Summary Judgment* (the "Motion"), the *Affidavit of Dan Godfrey in Support of Plaintiffs' Motion for Summary Judgment* (the "Godfrey Affidavit"), the *Declaration of Jana Hessmeyer in Support of Plaintiffs' Motion for Summary Judgment* (the "Hessmeyer Declaration"), and the evidence submitted therewith.

On April 4, 2011 the Court ordered Plaintiffs AgStar Financial Services, FLCA and AgStar Financial Services, PCA ("Plaintiffs") to describe why this case should not be stayed due to the bankruptcy of Defendant Oolman Dairy Leasing, LLC. Doc. 174. On April 15, 2011, Plaintiffs filed notice with the Court that the bankruptcy had been dismissed on September 14, 2010. Doc. 175. The Court recognizes that a copy of the dismissal was attached to Plaintiffs' Motion to Distribute sale proceeds from the Oolman Receivership. Docs. 157 Ex. A. Further, the Court recognizes that it erred in its interpretation of the lift of the bankruptcy stay (Doc. 142 Ex.

A) and that the stay was completely lifted. Plaintiffs moved for summary judgment on September 24, 2010. Doc. 158. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at

2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**DETERMINATION**

Upon consideration and for good cause, the Court sets forth the following determinations:

1. All necessary parties defendant have been served with the Complaint and summons according to law or have waived service by affirmative action, and all parties are properly before the Court.

2. All necessary parties have either answered the Complaint, or the AgStar entities are entitled to have judgment entered against them by virtue of their failure to answer the Complaint.

3. There exists no genuine issue of material fact and the AgStar Entities are entitled to judgment as a matter of law, as set forth herein, on all Claims for Relief as set forth in the Complaint.

4. There exists no genuine issue of material fact and FLCA, as the assignee and a successor-in-interest to DeLaval, is entitled to judgment as a matter of law, as set forth herein, on Counts One (in part), Two, Three, Four, Five, Six, Nine and Fourteen of DeLaval, Inc.'s *Amended Cross-Claim Against Midwest Dairy Investments, Oolman Dairy, LLC and Oolman Dairy Leasing, LLC and Counterclaim* (the "Cross-Claim"). [Doc. 91.]

5. There is currently due and owing to Defendant Treasurer real estate taxes as shown on the Treasurer's tax records, the exact amount being unascertainable at the present time, but which amount will be ascertainable by the time of the sale of the Mortgaged Premises[1], which taxes constitute valid and subsisting liens thereon for that amount due and owing.

6. On or about May 23, 2006, for good and valuable consideration, Oolman Leasing and Midwest Dairy executed and delivered to FLCA the FLCA Note in the principal amount of $8,100,000.00, in which Oolman Leasing and Midwest Dairy agreed to be jointly and severally liable on the full amount due under the FLCA Note, together with interest on the unpaid balance until paid in full.

7. On or about May 23, 2006, for good and valuable consideration, Oolman Dairy

---

[1] All capitalized terms not herein defined shall have the same meaning as set forth in the Motion.

and Vreba-Hoff executed and delivered to PCA the PCA Note in the principal amount of $3,565,000.00, in which Oolman Dairy and Vreba-Hoff agreed to be jointly and severally liable on the full amount due under the PCA Note, together with interest on the unpaid balance until paid in full.

8. On or about May 23, 2006, in order to secure payment of the obligations evidenced by the FLCA Note, Oolman Leasing executed and delivered to FLCA the FLCA Mortgage, securing the Mortgaged Premises, as more fully described in the FLCA Mortgage, included in the Appendix at Tab D. More specifically, the FLCA Mortgage conveyed Oolman Leasing's interest in the following:

> SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT 1 AND INCORPORATED HEREIN BY REFERENCE.

9. The FLCA Mortgage was recorded on May 23, 2006 with the Paulding County Recorder as Instrument No. 200600001701. Said Mortgage became a valid, first mortgage lien upon and security interest in the Mortgaged Premises, subject only to the liens of Defendant Treasurer for unpaid real estate taxes.

10. Applying the doctrine of *lis pendens*, the effective date of recordation of FLCA's Mortgage is May 23, 2006, and any and all persons who obtained liens on the Mortgaged Premises subsequent to May 23, 2006, whether known or unknown, have received effective and sufficient notice of the foregoing action and, accordingly, any such lienholders shall have their interests foreclosed and are bound by this decree.

11. To further secure the payment of the obligations evidenced by the FLCA Note, on May 23, 2006, Oolman Leasing executed and delivered to FLCA the Easement. The Easement

was recorded on May 23, 2006 with the Paulding County Recorder as Instrument No. 200600001703.

12. To further secure the payment of the obligations evidenced by the FLCA Note, Vreba-Hoff executed and delivered to FLCA the VHDD Guaranty, in which Vreba-Hoff agreed, among other things, to be liable to FLCA for an amount the greater of Five Million and 00/100 Dollars ($5,000,000.00) or "an amount equal to one year's interest on all then-existing Program Loans" as defined in the VHDD Guaranty, including the loan evidenced by the FLCA Note.

13. In order to secure FLCA's first and best priority lien on the Mortgaged Premises, several other parties which may claim an interest in the same signed Subordination Agreements to reflect their agreement to subordinate to FLCA's lien. On or about April 17, 2008, Oolman Dairy executed and delivered to FLCA the Oolman Subordination, subordinating its interest in the Mortgaged Premises to FLCA. The Oolman Dairy Subordination was recorded on June 16, 2008 with the Paulding County Recorder as Instrument No. 200800001783.

14. Defendant First National Bank ("First National") executed and delivered to FLCA the First National Subordination, subordinating its interest in the Mortgaged Premises to FLCA. The First National Subordination was recorded on June 11, 2009 with the Paulding County Recorder as Instrument No. 200900002434.

15. DeLaval executed and delivered to FLCA the DeLaval Subordination, subordinating its interest in the Mortgaged Premises to FLCA. The DeLaval Subordination was recorded on June 11, 2009 with the Paulding County Recorder as Instrument No. 200900002435.

16. To further secure the amounts due and owing under the FLCA Note, on or about May 23, 2006, Oolman Leasing executed and delivered to FLCA the First Security Agreement,

securing the amounts due and owing under the FLCA Note, and granting FLCA a security interest in the Oolman Leasing Collateral, as described more fully in the First Security Agreement.

17. To further secure the amounts due and owing under the PCA Note, on or about May 23, 2006, Oolman Dairy executed and delivered to PCA the Second Security Agreement further securing the amounts due and owing under the PCA Note and granting PCA a security interest in the Oolman Dairy Collateral as described more fully in the Second Security Agreement.

18. Pursuant to the FLCA Security Agreement, FLCA perfected its security interest in the Oolman Leasing Property by filing a UCC-1 Financing Statement on August 14, 2006 with the Ohio Secretary of State as File No. OH00105506967, as amended by UCC-1 Financing Statement Amended Document No. 20092440124 filed on August 31, 2009 and by UCC-1 Financing Statement Amended Document filed on October 19, 2009 in favor of FLCA.

19. Pursuant to the Second Security Agreement, PCA perfected its security interest in the Property by filing a UCC-1 Financing Statement on August 14, 2006 with the Ohio Secretary of State as File No. OH00105506745 in favor of PCA.

20. In order to further secure the payment of the obligations evidenced by the PCA Note, G. Oolman, for good and valuable consideration, executed and delivered to PCA the G. Oolman Guaranty, under and by which G. Oolman agreed to be personally liable to PCA for all amounts due and owing to PCA by Oolman Dairy.

21. The AgStar Notes are in default and are currently due and payable. The AgStar Notes are in default for failure of Oolman Leasing and Midwest to make payments when due and

owing under the FLCA Note since March 1, 2009, and the failure of Oolman Dairy and Vreba-Hoff to pay all amounts due and owing under the PCA Note when the same matured on June 1, 2009. Furthermore, each of the AgStar Notes provides that it is an additional Event of Default if any of the other AgStar Notes is in default.

22. The defaults under the AgStar Notes have been admitted to by the Oolman Borrowers. On or about September 9, 2009, the Oolman Borrowers entered into a Pre-Negotiation Agreement with the AgStar Entities, in which the Oolman Borrowers: identified the AgStar Loan Documents; acknowledged and agreed that the AgStar Notes and related AgStar Loan Documents were duly executed and delivered by each of the Oolman Borrowers; acknowledged and agreed that the AgStar Notes and related AgStar Loan Documents remained in full force and effect; acknowledged and agreed that each were in default under the AgStar Notes and to the nature of the defaults by each under the AgStar Notes; agreed to the amounts due and owing under each of the Notes as of August 31, 2009; acknowledged and affirmed their obligations under the AgStar Notes; and unequivocally waived any right to trial by jury.

23. As of July 31, 2010, there was justly due and owing to FLCA pursuant to the FLCA Note an amount not less than $8,927,709.11 (including principal in the amount of $8,100,000, accrued non-default interest in the amount of $587,163.48 and accrued default interest in the amount of $240,545.63), plus: (I) all costs and charges incurred in the collection or enforcement of the FLCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 forward at the per annum rate of 7.4959%; and (iii) all other amounts and charges due and owing under the FLCA Note (the "FLCA Note Balance").

24. As of July 31, 2010, there was justly due and owing to PCA pursuant to the PCA

Note an amount not less than $2,070,319.60 (including principal in the amount of $1,756,418.18, accrued non-default interest in the amount of $223,289.79 and accrued default interest in the amount of $90,611.63), plus: (I) all costs and charges incurred in the collection or enforcement of the PCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 forward at the per annum rate of 7.4959%; and (iii) all other amounts and charges due and owing under the PCA Note (the "PCA Note Balance").

25. FLCA is entitled to judgment against Vreba-Hoff in the amount of $5,000,000 pursuant to the VHDD Guaranty, plus any and all attorneys' fees and expenses incurred in the enforcement of the VHDD Guaranty, as set forth therein.

26. The conditions in the FLCA Mortgage has been broken by, among other reasons, Oolman Leasing's and Midwest's failure to make all payments due under the FLCA Note. Therefore, FLCA is entitled to have the equity of redemption of all Defendants in and to the Mortgaged Premises foreclosed.

27. The AgStar Entities are entitled to an order of permanent possession over the AgStar Collateral.

28. The AgStar Entities are entitled to all fees and expenses and all costs of collection on the AgStar Notes, including, without limitation, filing fees, title costs, and attorneys' fees and expenses. The AgStar Entities may petition the Court at a later date for the exact amount of fees and costs due and owing.

29. On or about July 17, 2007, Midwest, for good and valuable consideration, executed and delivered to DeLaval the EFPA.

30. Pursuant to the EFPA, DeLaval provided loans to Midwest and nine dairy leasing

facilities for the purpose of conveying services and equipment to Midwest and the dairy leasing facilities.

31. In order to further secure that portion of the EFPA which covered the Mortgaged Premises, on January 13, 2009, for good and valuable consideration, Midwest executed and delivered to DeLaval the Oolman DeLaval Note in the principal amount of $1,037,076.00

32. To further secure payment of the Oolman DeLaval Note, on January 12, 2009, for good and valuable consideration, Oolman Leasing executed and delivered to DeLaval the Oolman DeLaval Guaranty, whereby Oolman Leasing guaranteed payment and performance of the EFPA and the Oolman DeLaval Note.

33. In order to further secure the amounts due and owing under the Oolman DeLaval Note, on or about January 12, 2009, Oolman Leasing executed and delivered to DeLaval the DeLaval Mortgage securing the amounts due and owing under the Oolman DeLaval Note, and granting DeLaval a security interest in the Mortgaged Premises and certain fixtures thereon, as described more fully in the DeLaval Mortgage.

34. In order to further secure the amounts due and owing under the Oolman DeLaval Note, on or about January 12, 2009, Midwest and Oolman Leasing executed and delivered to DeLaval the DeLaval Security Agreement, further securing the amounts due and owing under the Oolman DeLaval Note and granting DeLaval a security interest in the DeLaval Collateral as described more fully in the DeLaval Security Agreement.

35. DeLaval perfected its security interest in the DeLaval Collateral by filing two UCC-1 Financing Statements on August 14, 2009 and October 29, 2009 with the Ohio Secretary of State as File Nos. OH00136634147 and OH00120617294, respectively, in favor of DeLaval

and against Midwest and Oolman Leasing.

36. On or about February 29, 2008, to further secure payment of that portion of the EFPA which covers the loan made to Springfield Dairy Leasing, LLC, Midwest executed and delivered to DeLaval the Springfield DeLaval Note in the principal amount of $510,000.

37. On or about September 4, 2007, in order to further secure payment of that portion of the EFPA which covers the loan made to Hopewell Dairy Leasing, LLC, Midwest executed and delivered to DeLaval the Hopewell DeLaval Note in the principal amount of $858,979.

38. On or about July 17, 2007, in order to further secure payment of that portion of the EFPA which covers the loan made to Van Ham Dairy Leasing, LLC, Midwest executed and delivered to DeLaval the Van Ham DeLaval Note in the principal amount of $924,576.00.

39. Pursuant to the Settlement Agreement, DeLaval assigned to FLCA, among other things: (a) DeLaval's claims and rights against Oolman Leasing, including all rights arising under the Oolman DeLaval Note, Oolman DeLaval Guaranty and related loan documents; (b) DeLaval's claims and rights against Midwest, to the extent that such claims and rights arise from or are related to the Mortgaged Premises or to Oolman Leasing, Van Ham Leasing, Springfield Leasing, and Hopewell Leasing; ©) DeLaval's liens and security interests in the DeLaval Collateral; and (d) all of its liens related to the Mortgaged Premises. Thus, FLCA is the proper party in interest to obtain judgment on the Assigned DeLaval Counts.

40. The DeLaval Loan Documents are in default for failure of Midwest and Oolman Leasing to make all payments when due and owing since July 4, 2009.

41. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Oolman DeLaval Note the principal amount of not less $1,037,076, plus: (I) all costs and charges

11

incurred in the collection or enforcement of the Oolman DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Oolman DeLaval Note (the "Oolman DeLaval Loan Balance").

42. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Van Ham DeLaval Note the principal amount of not less $856,838.11, plus: (I) all costs and charges incurred in the collection or enforcement of the Van Ham DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Van Ham DeLaval Note (the "Van Ham DeLaval Loan Balance").

43. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Springfield DeLaval Note the principal amount of not less $393,375.71, plus: (I) all costs and charges incurred in the collection or enforcement of the Springfield DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Springfield DeLaval Note (the "Springfield DeLaval Loan Balance").

44. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Hopewell DeLaval Note the principal amount of not less $579,472.92, plus: (I) all costs and charges incurred in the collection or enforcement of the Hopewell DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.00% from July 4, 2009; and (iii) all other amounts and charges due and owing under the Hopewell DeLaval Note (the "Hopewell DeLaval Loan Balance," and together with the Van

Ham DeLaval Note Balance, the Oolman DeLaval Note Balance, and the Springfield DeLaval Note Balance, the "Dairy Notes Balance").

45. FLCA is entitled to permanent possession of the DeLaval Collateral.

46. Defendant First National claims an interest in the Mortgaged Premises by virtue of a mortgage executed by Oolman Leasing and filed April 7, 2009, in the office of the Paulding County Recorder as Instrument No. 200900001079. The Court does not rule on the validity of such mortgage, except to the extent that, by virtue of, among other things, the First National Subordination, such mortgage is subordinate to the Mortgage held by FLCA.

47. Defendant C&Y Oil Company ("C&Y") claims an interest in the Mortgaged Premises and or certain personal property located thereon by virtue of a mechanics' lien filed on October 26, 2009 and a UCC Financing Statement filed on November 3, 2009 with the Ohio Secretary of State and on November 4, 2009 with the Paulding County Recorder. The Court does not rule on the validity of C&Y's recorded interests in the Mortgaged Premises, except to the extent that such interests are subordinate to the Mortgage held by FLCA.

48. The Court further finds that there is no just reason for delay in entering final judgment in favor of the AgStar Entities on the claims identified herein.

### JUDGMENT ENTRY

Accordingly, it is ORDERED, ADJUDGED, AND DECREED that Plaintiffs' motion for summary judgment (Doc. No. 158) is granted.

FURTHER ORDERED that the equity of redemption of all Defendants in and to the Mortgaged Premises shall be foreclosed, and the Mortgaged Premises sold.

13

FURTHER ORDERED that judgment be entered in favor of FLCA and against Oolman Leasing and Midwest, jointly and severally, in the full amount of not less than $8,927,709.11 (including principal in the amount of $8,100,000, accrued non-default interest in the amount of $587,163.48 and accrued default interest in the amount of $240,545.63), plus: (I) all costs and charges incurred in the collection or enforcement of the FLCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per annum rate of 7.4959%; and (iii) all other amounts and charges due and owing under the FLCA Note

FURTHER ORDERED that judgment be entered in favor of PCA and against Oolman Dairy and Vreba-Hoff in the amount of not less than $2,070,319.60 (including principal in the amount of $1,756,418.18, accrued non-default interest in the amount of $223,289.79 and accrued default interest in the amount of $90,611.63), plus: (I) all costs and charges incurred in the collection or enforcement of the PCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per annum rate of 7.4959%; and (iii) all other amounts and charges due and owing under the PCA Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Vreba-Hoff in the amount of $5,000,000, along with post-judgment interest at the statutory rate and any and all attorneys' fees and other expenses incurred by FLCA in the enforcement of the VHDD Guaranty, as set forth therein. FLCA may petition the Court at a later date as to the exact amount due and owing for such fees and expenses.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest and Oolman Leasing, jointly and severally, for the Oolman DeLaval Loan Balance in the full amount of $1,037,076, plus: (I) all costs and charges incurred in the collection or enforcement of

the Oolman DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Oolman DeLaval Note

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest for the Springfield DeLaval Note Balance in the full amount of the principal amount of not less $393,375.71, plus: (I) all costs and charges incurred in the collection or enforcement of the Springfield DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Springfield DeLaval Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest on the Hopewell DeLaval Loan Balance in the principal amount of not less $579,472.92, plus: (I) all costs and charges incurred in the collection or enforcement of the Hopewell DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.00% from July 4, 2009; and (iii) all other amounts and charges due and owing under the Hopewell DeLaval Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest in the full amount of the Van Ham DeLaval Loan Balance of $856,838.11, plus: (I) all costs and charges incurred in the collection or enforcement of the Van Ham DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Van Ham DeLaval Note.

FURTHER ORDERED that the proceeds of said sale of the Property be distributed as follows:

**First:** To the Paulding County Treasurer, for the balance of the unpaid real estate taxes, assessments, interest and penalties, if any, due and payable on the Mortgaged Premises;

**Second:** To the AgStar Entities, the sum of the AgStar Loan Balance and the Dairy Notes Balance, plus post-judgment interest, expenses, and title costs, which amounts are unascertainable at this time but will be ascertainable at the time of the sale; and

**Third:** The balance, if any, to be held by such party designated by this Court pending further order of this Court.

FURTHER ORDERED that, in the event that the AgStar Entities are the successful bidder at any sale of the Property, the amount of the deposits made herein by the AgStar Entities and the costs of any such sale shall be deducted from the total amount of Court costs otherwise payable herein.

FURTHER ORDERED that the AgStar Entities are entitled to a permanent order of possession over the AgStar Collateral and the DeLaval Collateral.

FURTHER ORDERED that the AgStar Entities retain the right to, and may at their sole option, credit bid up to all amounts due to it at any sale of the Property.

FURTHER ORDERED that there may be due to the AgStar Entities additional sums advanced by it under the terms of the AgStar Loan Documents to pay real estate taxes, insurance

premiums, property protection, and attorneys' fees, which sums are to be determined by further Order, and paid as a "Second" priority as provided hereinabove.

FURTHER ORDERED that, upon the confirmation of any sale made herein, a minute entry of these proceedings shall be entered upon the County Records for Paulding County, Ohio to reflect that all interests are released as a lien against the Property, and that all parties to this action are perpetually barred from asserting any lien or rights upon the Property to the purchaser thereof, or anyone claiming under or through said purchaser, and subject to further order of this Court.

FURTHER ORDERED that, upon the confirmation of any sale made herein, that the Receiver or any Master Commissioner designated to sell the Property by the Court shall direct counsel for the AgStar Entities to prepare appropriate deed(s) for the sale of the Property to the successful bidder(s) according to Ohio Revised Code §2329.36. The Receiver or Master Commissioner shall sign the deed(s).

FURTHER ORDERED that, after said sale has been completed, the Receiver or any Master Commissioner shall convey to the purchaser said Property and that a Writ of Possession of said Property be issued.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE

## **EXHIBIT 1**

Situated in the Township of Harrison, County of Paulding and State of Ohio:

And known as being in Section 1, Town 2 North, Range 1 East;

And known as a being part of a 319.540 acre tract conveyed to Oolman Dairy Leasing, LLC in Deed Volume 512, Page 1704, more particularly described as follows:

Beginning at a 1 inch iron rod found in a monument box at the Southeast corner of Section 1, also being the intersection of the centerlines of County Road 144 and Township Road 61;

Thence along the centerline of County Road 144, North 87 deg. 49' 46" West a distance of 2493.57 feet to a mag nail set at the Southeast corner of a 1 acre tract conveyed to Joe H. Santos and Amelia D. Santos in Deed Volume 233, Page 1866;

Thence along the East line of said Santos tract, North 01 deg. 16' 02" East, passing a 5/8 inch iron pin set on the North right-of-way line of County Road 144 at 30.00 feet, a total distance of 255.00 feet to a 5/8 inch iron pin set at the Northeast corner of said Santos tract;

Thence along the North line of said Santos tract, North 87 deg. 49' 46" West a distance of 180.00 feet to a 5/8 inch iron pin set on the West line of the Southeast quarter of Section 1 at the Northwest corner of said Santos tract;

Thence along the West line of the Southeast quarter of Section 1, North 01 deg. 16' 02" East a distance of 1261.67 feet to a 5/8 inch iron pin set;

Thence along a new division line, South 87 deg. 49' 46" East, passing a 5/8 inch iron pin set at 2642.23 feet, a total distance of 2672.23 feet to a 5/8 inch iron pin set on the East line of Section 1, also being the centerline of Township Road 61;

Thence along the centerline of Township Road 61, South 01 deg. 13' 00" West a distance of 1516.70 feet to the place of beginning. Containing 92.000 acres, more or less, of which 2.474 acres are within the road right-of-ways, leaving a net acres of 89.526 acres. Subject to all legal highways, easements, and restrictions of record.

This description is based on field survey Job No. S1802, by John P. Haley, Registered Surveyor No. 6819.

**6787 Road 144**
**Antwerp, Ohio 45813**

**PPN: 18-01S-001-00**